Hercules Ice Machine Company, to the use of the Edward P. Allis Company, v. Adolph Segal, Joseph Koenigsberg, to the use of the Colonial Finance Company, Appellant, and Stokes Brothers, Limited.

*Assignment—Equitable assignment—Contract.*

S. being indebted to a corporation for two machines made or in process of making for him, and the corporation being indebted to K., gave the latter an order on S., for certain bonds, saying, " any arrangement that you make with him whereby we are not charged with more than ten thousand dollars of bonds by you, will be satisfactory to us if it is to him." K. presented the order to S., gave him a copy of it, and kept the original, but S. declined to deliver the bonds on the ground that the corporation had not finished its work. He subsequently expressed in writing his willingness to do so if the corporation would give a guaranty to do certain

specified things with respect to the machines. He, however, loaned K. one thousand dollars on his due bill. K. never received the bonds. *Held*, that as the minds of the parties did not meet, there was no contract, and no assignment of the bonds which took precedence of a subsequent assignment of them to another party.

Argued Jan. 14, 1898. Appeal, No. 287, Jan. T., 1897, by the Colonial Finance Company, from order of C. P. No. 2, Phila. Co., Sept. T., 1896, No. 1034, dismissing exceptions to referee's report. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Amicable action in the nature of a bill in equity.

Exceptions to referee's report.

The report of the referee, N. DuBois Miller, Esq., was as follows :

On September 20, 1894, the Hercules Ice Machine Company, a corporation of the state of Illinois, with its principal place of business in the city of Aurora, Illinois, contracted in writing with Adolph Segal, of Philadelphia, for the erection on his premises in the city of Philadelphia of one complete one hundred and twenty ton ice-making plant and apparatus under letters patent owned or controlled by the Hercules Ice Machine Company, in accordance with specifications annexed to the contract, for which the Hercules Ice Machine Company was to be paid the sum of $78,700, of which $10,000 was to be paid in cash on delivery of the machinery in the building, $20,000 cash and $15,000 in first mortgage bonds at par on completion of thirty days' satisfactory run, $16,850 in a thirty days' note, and $16,850 on a sixty days' note, to be dated on completion of thirty days' satisfactory run. There were specific provisions with regard to acceptance of notes not being considered as payment until actually paid, etc., and a guaranty that if the machinery and apparatus should not accomplish the results guaranteed in the specifications, then a reasonable time should be allowed in which to accomplish the results. On the same day another contract in precisely the same terms as the one just recited was made between the same parties for the erection of another ice plant on another property of Segal in West Philadelphia. At the time when this contract was made, and for some time prior

and subsequent thereto, Joseph Koenigsberg had represented the Hercules Ice Machine Company as its agent for the purpose of obtaining contracts upon which he received commissions, and on each of the foregoing contracts he was entitled to receive a commission of $9,000. At some time prior to July 12, 1895, the Hercules Company had suggested that Koenigsberg accept in part payment of this commission, $10,000 of the bonds which Segal had agreed to pay under his contracts, but this Koenigsberg declined to do. Writing on July 12, 1895, to the president of the company, he said: "I have carefully gone over the entire correspondence relative to the Segal bonds, and while it is true that you have insisted several times that I must accept $10,000 in bonds as a part of my commission, the whole correspondence very pointedly indicates that you are in error in the premises. . . . . My commission is due and I will take bonds if you have them, or I will take acceptances or cash, the form of the payment being immaterial. I do not consent and never have consented to take these bonds for my commission, with the possibility that they may not be delivered to me in one year or ten years." He received no reply to this letter and on July 17, 1895, he wrote again to the Hercules Ice Machine Company, proposing that the company should give him an order on Segal for $10,000. He wrote: "The order is not to specify 'bonds,' nor that the amount named is due as commission merely on Segal contracts. With this order in hand I will go to Philadelphia and attempt to collect the claim; it being understood that I accept the order as payment to the amount named, provided Mr. Segal honors the same, but otherwise the order is void."

On July 19, 1895, the Hercules Ice Machine Company replied to Koenigsberg's letter of the 17th and inclosed to him a letter from them to Segal bearing the same date, saying: "We are indebted to Mr. Koenigsberg for services rendered, and in part settlement he has agreed to accept $5,000 worth of bonds on each of the plants erected by us for you, making $10,000 in all. . . . . We trust that you will therefore see your way clear to arrange the matter to his satisfaction. Any arrangement that you make with him whereby we are not charged with more than $10,000 of bonds by you will be satisfactory to us if it is to him."

On or about July 25, 1895, Koenigsberg presented this orig-

inal letter to Segal and handed to and left with him a copy at Segal's office in the Drexel building, Philadelphia. Segal declined to give any bonds to him upon the ground that the company had not finished its work, nor fulfilled its contract, and, upon being asked by Koenigsberg what more he required, promised to give him a letter setting out what the ground of his complaint was.

On August 1, 1895, Koenigsberg, not having received the promised letter from Segal, again called upon him and was handed a letter which Segal was about sending to him, in which Segal specified the grounds of his complaint, and concluded by saying that if the Hercules Company would do certain specified things with respect to the machines, " I will be only too glad to turn you over ten thousand dollars of the bonds. But I will have to have a guarantee from Mr. Allison personally, as I will not take their word for it. I will also say that if I do not hear from them in ten days from this date, I will begin suit for damages," and he again refused to give any bonds to Koenigsberg until the Hercules Ice Machine Company had fulfilled its contract, as he claimed it should have been fulfilled. Upon Koenigsberg stating that he needed money very much and asking him to lend him $1,000, he did so, taking from Koenigsberg a due bill, in the following form:

" $1,000.00                              Aug. 1, 1895.

" Borrowed from Adolph Segal one thousand dollars, ($1,000) which I promise to return to him as soon as I receive the ten one thousand dollar bonds of the Philadelphia Ice Mfg. Co. I will place them with him as collateral.

" This loan to be repaid within thirty days from date.

" J. KOENIGSBERG."

Before this due bill had been written out there had been prepared a collateral note in another form, but Segal, conceiving the idea that its acceptance might be construed as an acknowledgment that he held the bonds for Koenigsberg, tore it up and wrote the due bill as above quoted.

On August 3, 1895, Koenigsberg inclosed to the Hercules Ice Machine Company the letter of August 1, 1895, from Segal to himself, and he then wrote:

" There must be something done pretty soon in regard to

these bonds, as I cannot get along without means any longer."

On August 5, 1895, the Hercules Ice Company acknowledged receipt of Koenigsberg's letter of August 3, stating: "If we understand his (Segal's) letter correctly, it simply binds him to the delivery of $10,000 of bonds instead of $30,000, which is our due under the contract; it therefore cannot be considered as a basis for a settlement."

On August 24, 1895, Koenigsberg again wrote to the Hercules Ice Machine Company, saying: "My commission on the Segal contracts is long overdue. You gave me an order or request on Mr. Segal for $10,000, which he declines to honor on the ground that his plant is not up to the contract requirements. I have made diligent efforts to obtain the fund from him but have failed to do so. Mr. Segal makes a proposition to pay me the amount of $10,000, as per your order, if you agree to put the plants in good condition, etc., as per his letter of August 1. In your letter to me of August 5, you declined to enter into this agreement, as it simply binds him to the delivery of $10,000 bonds instead of $30,000 which is your due under the contract. This clearly throws the responsibility for the immediate payment of my commission directly on you.

"I insist that you pay me the amount either by checks or acceptances either in one payment or in substantial instalments."

No further correspondence upon the subject passed between Koenigsberg and the Hercules Ice Company until the following December. In the meantime Koenigsberg and Segal met twice—once in the latter part of September and later on the twenty-sixth day of October, at which interviews Segal expressed the hope that Koenigsberg might get the bonds, but he made no express promise to give them to him.

On September 20, 1895, Segal and the Hercules Company entered into a new agreement by which, after reciting that matters of difference had arisen between them, they provided that Segal should immediately pay two notes aggregating $25,000, then overdue, and subsequently should deliver to the Hercules Company twelve one thousand dollar bonds, one half of them to be secured on each of the two ice plants, and to pay $500 in cash, "when one J. J. De Kinder expresses his satisfaction as to said plants." The contract was stipulated to be in adjust-

ment of all differences between the contracting parties or claims which either might have against the other.

On November 19, following, the Hercules Company duly assigned to the Edward P. Allis Company all money due under the contract of September 20, 1895, with Segal, and all rights thereunder.

On December 6, 1895, Koenigsberg, who had heard nothing of the assignment to the Edward P. Allis Company, wrote to the Hercules Company:

"I owe Mr. Segal $1,000 which I promised to pay him upon 'recept of my bonds. If you will send me by return mail to my New York office an order to Segal to deliver to me ten thousand dollars in bonds on your act, I think I can get those bonds by paying him the $1,000. A friend will advance me this amount until I can cash the bonds. Hoping to receive your favorable reply immediately, I remain," etc.

On December 16, 1895, without having received any reply to this letter, Koenigsberg having had stated an account between himself and the Hercules Company, consisting of numerous items on both sides, including his commissions of $18,000 on the Segal contracts, and showing a balance of $11,439.50 due to Koenigsberg on October 1, 1895, executed at the foot of the sheet on which the account was stated, the following:

"For value received I hereby assign and transfer the foregoing account and the moneys represented therein, unto the Colonial Finance Company absolutely, with interest due and to become due, and I hereby give unto the said company and its assigns full power and authority to collect, receive, demand and sue for the same, in my name if necessary, but to the use of the said company and its assigns."

On December 17, 1895, Segal was notified by counsel for the Edward P. Allis Company of the assignment of the Hercules Company to the Allis Company and a request was at the same time made upon him for compliance with the contract of September 20.

December 18, 1895, Koenigsberg to the use of the Colonial Finance Company issued a writ of foreign attachment against the Hercules Company, summoning Segal as garnishee. The suit was begun in common pleas, No. 4, as of March term, 1896, No. 5. Although no affidavit of cause of action was filed,

counsel for plaintiff stated to counsel for the Edward P. Allis Company that the cause of action was the balance of account as shown on the statement to which the assignment to the Colonial Finance Company was appended. Subsequently when the statement of claim was filed March 19, 1896, credit was allowed for the $10,000 of bonds.

On December 26, 1895, the president of the Hercules Company replied to Koenigsberg's letter of the 6th of the same month, saying: " In regard to the Philadelphia matter, I have to inform you that some time since in order to settle with the Edward P. Allis Company, who built our engines, it was necessary for us to assign our account against Adolph Segal, which we did. As soon as Mr. Segal settles the matter with them we shall be prepared to honor your draft in his favor for $1,000 and to settle the balance of the commission matter in a proper manner."

On January 2, 1896, Koenigsberg executed a formal assignment to the Colonial Finance Company of " all my right, title, equity and interest of, in and to certain bonds of the Philadelphia Ice Manufacturing Company amounting to $10,000 (secured by mortgage), now deposited with Adolph Segal and held by him for my use."

January 4, 1896, the Colonial Finance Company notified Segal of Koenigsberg's assignment to it of January 2, 1896, handed him a copy of the assignment and demanded delivery of the bonds.

January 16, 1896, Stokes Brothers, Ltd., issued a writ of foreign attachment against the Hercules Company, summoning Segal as garnishee. The suit was begun in court of common pleas, No. 2, as of March term, 1896, No. 29.

### CONCLUSIONS OF LAW.

The referee is of the opinion :

1. That under the facts as set forth, there was no agreement by Koenigsberg to accept the order of the Hercules Company upon Segal for bonds in payment of his commission, nor was it given or taken as collateral security ; that it was thereafter, if not actually canceled or destroyed, treated as a nullity, and in law was such, and that as against the Edward P. Allis Company the subsequent assignee of the right, title and interest of

the Hercules Company under the agreement of September 20, 1895, the order of July 19, 1895, gives no title to the bonds admitted by Segal to be due to the Hercules Company, or its legal assignee.

2. That the foreign attachment issued at the suit of Koenigsberg to the use of the Colonial Finance Company in common pleas, No. 4, March term, 1896, No. 5, is no lien upon the cash or bonds due by Segal under the contract of September 20, 1895,

3. That the foreign attachment issued at the suit of Stokes Brothers, Ltd., in common pleas, No. 2, March term, 1896, No. 29, is no lien upon any indebtedness due by Segal under his contract with the Hercules Company of September 20, 1895, the defendant company having parted with all of its right, title and interest in said contract to the Edward P. Allis Company, prior to the issuance of the attachment.

4. That Segal is not entitled to any deduction from the amount due by him under his contract of September 20, 1895, to the Edward P. Allis Company, assignee of the Hercules Company.

5. That the costs under the agreement of reference should follow the decree and be paid by the Colonial Finance Company.

It may be proper to give the reasons for the referee's conclusions of law:

The findings of fact are undisputed, except as to the one question of Segal's having promised Koenigsberg in September or October, 1895, that he should have the bonds; upon this point the referee is satisfied that Segal's testimony is the more reliable. The first conclusion of law, that Koenigsberg never agreed to accept the order upon Segal for $10,000 of bonds as payment of his claim, or as collateral security therefor, is a deduction from the admitted facts. The test of his right to consider it as payment is whether at any time subsequent to his receipt of this order the Hercules Company owed him less than the full amount of his original claim, and could have successfully set up his acceptance of the order for these bonds as payment pro tanto of his claim. It seems impossible to reach such a conclusion. His original proposition was that he should be given an order for $10,000 cash, " to be void " if not honored. He did not receive an order for this amount of cash, but one calling for bonds to this amount, but it was not honored, and

he subsequently wrote to the Hercules Company, " this throws the responsibility for the immediate payment of my commission directly on you. I insist that you pay me the amount either by check or acceptances, either in one payment or in substantial instalments." In the face of such a positive repudiation of this form of payment it would have been impossible to hold that he had accepted the order in payment. Koenigsberg's subsequent conduct entirely accords with this finding. On December 6, 1895, he wrote for another order on Segal for $10,000 in bonds, and very shortly after, not having received the second order, he assigned to the Colonial Finance Company, not the balance of his claim, but his entire claim against the Hercules Company, without allowing any credit for the bonds, and still further acting upon the theory that there had been no payment on account, commenced suit by way of foreign attachment to the use of the finance company, and through his counsel stated that his cause of action was the original balance of account assigned to the finance company. It might well be that this subsequent course of conduct would not of itself necessarily determine his rights under the order of July 19, 1895, but it goes to show still further his attitude of mind on the subject, and that he never accepted the order for the bonds as a payment on account. It is certain that he never acquired title to any specific bonds, and that no action of trover would have lain against Segal had he parted with all of the bonds due and owing to the Hercules Company. Neither could Koenigsberg have sued the Hercules Company in trover or replevin.

It goes without saying that if the first conclusion of law is correct, the second and third follow as necessary corollaries.

As to the third conclusion, not much room is left for doubt upon reading the contract of September 20, 1895. Whatever might have been said in support of Segal's intention that he had advanced the $1,000 to Koenigsberg on the faith of the order of July 19, as to the correctness of which there might be some reasonable doubt, this argument fails in the face of the agreement of September 20, that on that day he owed $500 in cash and $12,000 in bonds.

Some question might have arisen as to whether the order of July 19, 1895, was not taken by Koenigsberg as collateral security, but that suggestion seems not only to be negatived by

the fact that there was no mention in the correspondence on either side of any such intention, but the thought was expressly disclaimed by his counsel on the argument.

The referee reported on exceptions as follows:

The second and fifth exceptions are substantially sustained and the referee therefore modifies his report so far as to state as part of his findings of fact that the letter dated July 19, 1895, from the Hercules Ice Machine Company to Adolph Segal reads as follows:

"N. D. M.

"Dec. 15/96.

"No. 6.

"Aurora, Ill., U. S. A., July 19, 1895.

"Mr. Adolph Segal,

"Drexel B'ld'g, Philadelphia.

"Dear Sir: This letter will be handed you by Mr. Joseph Koenigsberg, our eastern agent. We are indebted to Mr. Koenigsberg for services rendered, and in part settlement he has agreed to accept $5,000 worth of bonds on each of the plants erected by us for you, making $10,000 in all. These are the bonds which we have referred to in our correspondence with you, as having been disposed of by us.

"Mr. Koenigsberg has been entitled to this settlement for some time and we have been willing to settle with him, but have as you know, been unable to secure the bonds from you. We trust you will therefore see your way clear to arrange the matter to his satisfaction. Any arrangement that you make with him whereby we are not charged with more than $10,000 of bonds by you, will be satisfactory to us if it is to him.

"Very truly yours,

"Hercules Ice Machine Co.

"Edw. Worcester,

"V. P. & Gen'l Mgr."

The referee also finds as a fact that the letter of July 19, 1895, from the Hercules Ice Machine Company to Adolph Segal was not physically canceled or destroyed, but was retained by Koenigsberg after showing it and handing a copy of it to Segal and it was produced in evidence before the referee.

The other exceptions, viz: 1, 3, 4, 6, 7, 8 and 9 are not sustained, and are dismissed.

## MEMORANDUM.

After the testimony had all been closed before the referee, there was filed with him an agreement entered into between all the parties to the agreement of reference whereby it was agreed that there should be paid into the hands of the referee the sum of $5,000 by Adolph Segal in complete and final liquidation of the indebtedness of $12,000 in first mortgage bonds, and $500 in cash, admitted by Segal to be due under his contract of September 20, 1895, with the Hercules Ice Machine Company.

This agreement was carried out and the sum of $5,500 was deposited with the referee in accordance with the terms of agreement, which also released the Hercules Ice Machine Company from any claim on account of the $1,000 loaned by Segal to Koenigsberg. The additional $500 paid to the referee, was by way of interest on the original amount agreed to be paid, and was settled between the parties.

*Errors assigned* were in dismissing exceptions to referee's report.

*Henry T. Dechert,* for appellant.—An assignment of a chose in action or of a fund need not be by any particular form of words or particular form of instrument: Watson v. Bagaley, 12 Pa. 164; Sharpless v. Welsh, 4 Dallas, 279; Nesmith v. Drum, 8 W. & S. 9; Caldwell v. Hartupee, 70 Pa. 74; Ruple v. Bindley, 91 Pa. 296; Moeser v. Schneider, 158 Pa. 412; R. R. Co. v. Woelpper, 64 Pa. 366; East Lewisburg L. & M. Co v. Marsh, 91 Pa. 96; Bispham's Equity, sec. 165.

It is submitted that Koenigsberg's receipt of the order, his presenting it with a demand for compliance, and delivering a copy to Segal and retaining the original, show his intention, if any such evidence were needed, of taking the order on the basis on which it was given: Holmes v. Briggs, 131 Pa. 233; McIntyre v. Kennedy, 29 Pa. 448.

The creditor need not return to the debtor the draft or check received, but can sue the debtor on the original cause of action: Hunter v. Moul, 98 Pa. 13; Holmes v. Briggs, 131 Pa. 233.

*H. Gordon McCouch*, with him *Henry Pleasants*, for appellee.

OPINION BY MR. JUSTICE MITCHELL, May 2, 1898 :

The defendant, Segal, being indebted to the legal plaintiff, the ice machine company, for two ice machines made or in process of making for him, and the plaintiff being indebted to Koenigsberg, the plaintiff gave Koenigsberg an order on Segal for certain bonds, saying: "Any arrangement that you make with him, whereby we are not charged with more than $10,000 of bonds by you, will be satisfactory to us if it is to him." The controversy hinges on the effect of this order, and of what was done by the parties under it. The referee found as facts that Koenigsberg presented the order to Segal, gave him a copy of it, and kept the original, and that Segal declined to deliver the bonds on the ground that the ice machine company had not finished its work, but subsequently expressed in writing his willingness to do so if the company would give a guaranty to do certain specified things with respect to the machines, and loaned him $1,000 on his due bill in which he promised to deliver the bonds back to Segal as collateral as soon as he received them. It is claimed by the appellant, assignee of Koenigsberg, that these matters amounted to an assignment of the bonds, which took precedence of a subsequent assignment to the use plaintiff. In support of this contention cases are cited to the effect that no particular form of words is requisite for a valid assignment of a fund or a chose in action, and that contingent interests and expectancies may be the subject of a contract which will be enforced when the event happens. These legal principles are entirely sound but they are not applicable to the facts of this case. There can be no assignment, any more than any other contract, without the meeting of the minds of the contracting parties, and the referee has found here that neither Koenigsberg nor Segal accepted the order as a contract. On the contrary Koenigsberg not only did not receive the bonds, but never agreed to look to them as payment nor to release the machine company pro tanto as on a payment on account, nor on the other hand did Segal ever agree, in any manner that would bind him or make him liable, to deliver the bonds or to hold them for Koenigsberg on the order. The whole matter was an attempt at a settlement which was never reached, but remained

merely tentative. It is not necessary to review the evidence on which the referee reached this result. His findings of fact are practically unchallenged, and his conclusions follow as corollaries from them.

Judgment affirmed.